IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TAMMY VANRIPER, et al.**,                     Case Number 3:13cv2102

    Plaintiffs,

    v.                                              Magistrate Judge James R. Knepp, II

**LOCAL 14, INTERNATIONAL UNION
UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, et al.**,

    Defendants.                                     MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiffs are 55 employees of General Motors, LLC ("GM") who work at the GM Powertrain Plant in Toledo, Ohio ("Powertrain Toledo"). (Doc. 1, at ¶2). They allege Defendant GM breached the relative collective bargaining agreement ("CBA") and Defendants UAW International and UAW Local 14 (collectively "the Union Defendants") breached their duty of fair representation. (Doc. 1). Both GM and the Union Defendants ("Defendants") moved for summary judgment on all counts. (Docs. 40, 42). Plaintiffs filed one Response to both motions (Doc. 48), and Defendants filed separate replies (Docs. 49, 50). On November 25, 2014, the Court held oral argument on Defendants' motions for summary judgment, after which Plaintiffs were granted leave to file supplemental authority on the issue of whether the Complaint is barred by the statute of limitations. (Doc. 51). Plaintiffs filed a supplemental brief (Doc. 52), the Union Defendants replied (Doc. 53), and GM filed a Motion to Strike and Response to Plaintiffs' Supplemental Brief (Doc. 54).

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. The parties have consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 46). For the following reasons, the Defendants' motions for summary judgment are granted, and Plaintiffs' claims are dismissed.

## BACKGROUND

The following material facts are not in dispute.[1]

*Controlling Agreements*

On October 15, 2007, a new CBA between GM and the UAW International became effective ("2007 UAW-GM Agreement"). (Doc. 31, at ¶7). The 2007 UAW-GM Agreement governed the rights and responsibilities of Plaintiffs and Defendants until it was modified by the 2009 National Agreement Addendum ("2009 National Agreement Addendum"). *Id*. In particular, the CBA set forth a grievance procedure. (Doc. 31, at ¶¶ 7-8, 20; Ex. 14, Doc. 31).

Administrative appellate remedies were available under Article 33 of the UAW's Constitution, which required any appeal of a decision regarding interpretation of a CBA to go through the International President for final review and adjudication, in this case, UAW President Bob King. (Doc. 40, at 12-13; Doc. 31, at ¶27). Section 4(a) of the UAW Constitution required all appeals be signed by the union members seeking to pursue an appeal. (Ex. 6, Doc. 40, at 10).

---

1. The parties filed Stipulated Facts with attached exhibits. *See* Doc. 31. Further, the co-Defendants incorporated by reference selected evidence submitted in support of each other's summary judgment motions. (Doc. 40, at vi; Doc. 42, at 8).

*Plaintiffs' Employment*

All Plaintiffs, with the exception of four, discussed below, were recalled from various facilities or involuntary layoff to work at Powertrain Toledo as either production or skilled trades employees between March 3, 2009 and May 9, 2011. (Doc. 31, at ¶¶1, 6).

James Anderson and David Dettman were laid off on February 2, 2009. (Doc. 31, at ¶¶2-3). Neither Anderson nor Dettman were employed at Powertrain Toledo until March 28, 2011 and January 16, 2012, respectively, when they began working in production positions. *Id*. Neither Anderson nor Dettman have worked in a skilled trades classification at any time during their employment at Powertrain Toledo. *Id*.

Heather Finfrock and Gregory Libstorff were never laid off from Powertrain Toledo and never worked at the Willow Run facility. (Doc. 31, at ¶¶4, 5). Finfrock was reduced to a production position on September 20, 2010, and Libstorff on July 5, 2010. *Id*.

On January 29, 2009, skilled trades employees working at Powertrain Toledo received a written notice from Trish Long, Supervisor-Hourly Employment at Powertrain Toledo. (Doc. 31, at ¶9). The notice explained that all individuals who chose to make an application for a production job must do so by February 13, 2009 and all applications would remain on file. *Id*. If an individual had not applied for a production opening, he or she would not have been eligible for a production position until all production employees were recalled. *Id*.

GM provided all Plaintiffs (except Anderson and Dettman), with the "63(a), 63(b) & Lateral Transfer Application" for purposes of making an application to a production position. (Doc. 31, at ¶10). Paragraph 63 of that application referred to a specific section of the CBA that outlined procedures for transfer to positions at GM. (Doc. 31, at ¶10). Following the procedures set forth in the 2007 UAW-GM Agreement, many Plaintiffs accepted open positions at other

3

facilities, while others remained on involuntary layoff until they were recalled to open positions at Powertrain Toledo. (Doc. 31, at ¶12).

In May 2009, a newsletter from the UAW to its GM members outlined:

> [L]aid off skilled trades employees within the area hire will be made production job offers in inverse seniority order whether or not they have previously held production jobs with GM. This will occur after all area hire offers and offers to any volunteers in the extended area hire that have been exhausted.

(Doc. 31, at ¶16). The newsletter also specified that "skilled trades employees placed into production jobs shall be paid the applicable wage rate for their skilled trades classification and retain their rights to return to skilled trades jobs for which they are qualified by previously held classifications." (Doc. 31, at ¶ 17).

*The Hanley Grievance*

On February 24, 2011, Plaintiff Tim Hanley ("Hanley") filed a group grievance (the "Hanley Grievance") on behalf of unnamed employees charging "MGT with violation of the interpretation of the 2009 N.A. Modifications dated August 24-27, 2009, which states all skilled trades placed into production jobs will be paid the applicable wage rate for their skilled trades classification." (Doc. 31, at ¶20). The Hanley Grievance was properly made in accordance with the procedures outlined in the 2007 UAW-GM Agreement. *Id*. On March 2, 2011, the Hanley Grievance was denied by George Williams, GM-Human Resources Manager and referred to the second step in the CBA's grievance procedures by Tony Hoard, the Shop Chairperson. (Doc. 31, at ¶21).

Peggy Vorderburg (Supervisor-Labor Relations) and several members of the Powertrain Toledo Management and UAW Local 14 conducted the second step grievance meeting on March 10, 2011 and denied the claim. (Doc. 31, at ¶22). On March 14, 2011, UAW Local 14 filed a Notice of Unadjusted Grievance at Powertrain Toledo, notifying the plant it was appealing Peggy

4

Vorderberg's determination to the third step of the grievance procedure. (Doc. 31, at ¶23). On March 10, 2011, the Hanley Grievance was appealed to Umpire Status. (Doc. 31, at ¶24).

On September 3, 2011, R.S. Gallinger, on behalf of GM, withdrew the Hanley Grievance without prejudice to the position of either party; Brian Rivet, International Representative on behalf of the UAW, concurred. (Doc. 31, at ¶25).

Plaintiff Tammy VanRiper ("VanRiper") sought to appeal the withdrawal of the Hanley Grievance on October 25, 2011, as did Hanley on October 27, 2011. (Doc. 31, at ¶26). On December 12, 2011, Charlotte Rossi, the administrative assistant to the president of the UAW, confirmed the office received VanRiper's appeal and requested additional information. (Doc. 31, at ¶27). VanRiper submitted a detailed response to Rossi's inquiry, outlining the basis for her appeal. (Doc. 31, at ¶28).

Brian Rivet (on behalf of the UAW), wrote to President King regarding review of VanRiper's appeal, summarizing the UAW's positions as follows:

> [VanRiper] was laid off as a skilled tradesperson on January 20, 2009 in Toledo. On February 12, 2009 she filed a 63(b) to go to production. August 12, 2009 she was offered a permanent position at Willow Run in her trade. On May 2, 2010, she was recalled back to Toledo as a "Quality Operator" per her 63(b) application. Therefore, she was never forced to a production job/classification and is not entitled to receive Skilled Trades rate of pay while in production.

(Doc. 31, at ¶29).

President King, in turn, sent a letter to VanRiper on June 19, 2012, outlining the UAW's reasons for denying the Hanley Grievance. (Doc. 31, at ¶30). He determined that when VanRiper returned to Powertrain Toledo, after having been offered a permanent position as a skilled tradesperson at Willow Run, she was volunteering to return in a production role, per her 63(b) letter dated February 12, 2009. *Id.* President King found International Representative Rivet's

5

decision "not devoid of a rational basis" and concluded denial of the claim was "so obviously correct" that no purpose would be served by an appeal. (Ex. 23, Doc. 31, at 3).

After receiving President King's letter in June 2012, VanRiper testified she met with Ken Lortz (the Regional Director of International Union, UAW Region 2-B) and UAW Local 14 President Ray Wood. (Ex. 4, Doc. 38, at 79). Mr. Lortz arranged a meeting between VanRiper and President King's administrative assistant, Chuck Browning, which was held on February 22, 2013. (*Id.*, at 82). VanRiper met with Browning for a second time in March 2013, when Browning informed her that the International Union agreed with management on the denial of her appeal. (*Id.*, at 83).

Plaintiffs filed the instant case on September 20, 2013. (Doc. 1).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

ANALYSIS

A hybrid § 301/fair representation claim arises when a plaintiff alleges his or her employer breached its obligations under a CBA in violation of § 301 of the Labor Management Relations Act ("LMRA"), and the plaintiff's labor union violated its duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983); 29 U.S.C. § 185. These two claims are "inextricably interdependent", and require courts to analyze them as one hybrid § 301 claim. *DelCostello*, 462 U.S. at 164-65. In other words, no liability attaches unless both prongs of the hybrid § 301 claim are established. *Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 (6th Cir. 1999).

Here, Plaintiffs allege GM breached the CBA and the Union Defendants breached their duty of fair representation. (Doc. 1). Therefore, the Court analyzes Counts One and Two in Plaintiffs' Complaint as one hybrid § 301 claim pursuant to *DelCostello* and its progeny.

First, the Court considers Defendants' arguments that: 1) 53 of the 55 Plaintiffs failed to exhaust their administrative remedies; and 2) Plaintiffs' § 301 claims are time-barred by the applicable six-month statute of limitations. Each argument is addressed in turn.

<u>Failure to Exhaust</u>

GM claims all but two of Plaintiffs' claims are barred from federal review because they did not exhaust administrative remedies. (Doc. 40, at 12-13). Similarly, the Union Defendants claim, "Hanley and VanRiper were the only Plaintiffs who individually exhausted their internal union remedies from withdrawal of the group grievance." (Doc. 42, at 21). Plaintiffs maintain they exhausted their administrative remedies because the VanRiper and Hanley appeals were intended to apply to the group as a whole. (Doc. 48, at 11). However, Plaintiffs' position is unsupported by the evidence.

7

It is well-settled that a party must exhaust contractual grievance remedies before seeking relief in federal court. *Wilson v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 83 F.3d 747, 752 (6th Cir. 1996); *see also*, *Wagner v. General Dynamics*, 905 F.2d 126, 127 (6th Cir. 1990) ("federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress before filing suit") (internal citations omitted). In the context of a hybrid § 301 claim, prior to filing a complaint in federal court, a plaintiff must first: 1) follow any applicable grievance procedure included in the CBA; and 2) exhaust all available intra-union remedies capable of activating or reactivating his or her grievance. *Clayton v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America*, 451 U.S. 679 (1981); *Vaca v. Sipers*, 386 U.S. 171 (1967).

It is undisputed that the CBA in this case sets forth a grievance procedure. (Doc. 31, at ¶¶7-8, 20; Ex. 14, Doc. 31). Further, it is undisputed that internal union appeal remedies are available under Article 33 of the UAW's Constitution, which requires any appeal of a decision regarding interpretation of a CBA to go through the International President for final review and adjudication; in this case, President King. (Doc. 40, at 12-13; Doc. 31, at ¶27). Of particular importance, § 4(a) of the UAW Constitution requires all appeals be signed by the union members seeking to pursue an appeal. (Ex. 6, Doc. 40, at 10).

The parties stipulated that only VanRiper and Hanley appealed Defendants' joint decision to withdraw the Hanley Grievance. (Doc. 31, at ¶¶25-26; Ex. 19, Doc. 31). Moreover, in violation of § 4(a) of the UAW's Constitution, the record is clear that only VanRiper and Hanley signed appeals. (Ex. 19, Doc. 31). These facts, on their own, are enough to prove failure to

exhaust. *See*, *DeMott v. UAW Int'l Union*, 2011 U.S. Dist. LEXIS 21351, at *25-38 (E.D. Mich.).

What is more, however, is the plain language of the VanRiper and Hanley appeals demonstrates the appeals were their own, and not on behalf of the entire group. To this end, VanRiper's appeal states, "I would like to appeal the decision that was made regarding the Tim Hanley group grievance case number # AB-11. My personal appeal is based on the following documents." (Ex. 17, Doc. 31). Similarly, Hanley wrote, "I would like to appeal the decision that was made on the Tim Hanley group grievance (AB-11). Please review my situation." *Id*. Simply stated, only VanRiper and Hanley pursued the appellate procedures set forth in the CBA and UAW Constitution. Therefore, for 53 Plaintiffs, the Court is without jurisdiction to hear their claims.

Still, a failure to exhaust can be excused if "resort to the procedures is demonstrably futile." *Monroe v. Int'l Union, UAW*, 723 F.2d 22, 25 (6th Cir. 1983) (citing *Clayton*, 451 U.S. 679). Factors for determining futility include hostility on the part of the union officials, whether such appellate procedures would be adequate to "reactivate" the grievance or to award the "full relief" sought, and the delay that would occur if the procedures were followed. *Monroe*, 723 F.2d at 25 (quoting *Clayton*, 451 U.S. at 689). After defendants come forward with evidence of failure to exhaust administrative remedies, the burden is on plaintiffs to provide evidence excusing the failure to exhaust internal union remedies before filing suit. *DeMott*, 2011 U.S. Dist. LEXIS 21351, at *28-29 (citing *Clayton*, 451 U.S. at 689; *Terwiliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1039 (6th Cir. 1989)); *Willetts v. Ford Motor Co.*, 583 F.2d 852 (6th Cir. 1978). "[A] plaintiff cannot invoke [futility] in a conclusory fashion, but must present facts supporting the

9

claim of futility." *Dorn v. General Motors Corp.*, 131 F. App'x 462, 469 (6th Cir. 2005) (citing *Willetts*, 583 F.2d at 856).

Here, Plaintiffs argue the letter from President King denying VanRiper's appeal proves futility. (Doc. 48, at 11-12). Plaintiffs acknowledge President King had "the authority for final appeal of [the] grievance" under the UAW's Constitution and specifically direct to the portion of President King's letter to VanRiper which advised:

> For an interpretation of a collective bargaining agreement by a National Department or Regional Director, where the interpretation is so obviously correct that no purpose will be served by an appeal, and where it is consistent with other provisions of this Constitution and International Union policy, the appeal shall be directly to the International President. There shall be no further appeal from that decision.

(Doc. 48, at 11-12). Plaintiffs believe filing "hundreds of appeals" would only lead to the same result as VanRiper. (Doc. 48, at 12).

Plaintiffs' argument is problematic on two fronts. First, their belief that their claims would have been denied does not excuse failure to exhaust administrative remedies. "The subjective belief of a claimant of the futility of proceeding further with an appeal is insufficient to excuse him or her from at least attempting to utilize administrative procedures." *Blalock v. TRW, Inc.,* 1993 WL 475982, at *5 (E.D. Mich.) (citing *Terwiliger*, 882 F.2d at 1039). Such a standard would render the exhaustion requirement meaningless where any plaintiff believed he or she had a weak case.

Even assuming Plaintiffs' allegations that their appeals would have been denied are true, they have not shown GM or the Union Defendants "would not have cooperated with the dispute resolution process". *Terwiliger*, 882 F.2d at 1039; *see also*, *Miller*, 748 F.2d 323. On the contrary, President King's letter demonstrated that he considered VanRiper's situation individually. Indeed, he expressly applied VanRiper's facts to the language of the CBA but

10

found International Representative Rivet's decision "not devoid of a rational basis." (Ex. 23, Doc. 31, at 3). President King sought a statement from Mr. Rivet regarding VanRiper's situation, then carefully walked through VanRiper's job history, transfer request, and appeal, concluding denial of the claim was "so obviously correct" that no purpose would be served by an appeal. (*Id*., at 6; Doc. 31, at ¶29). The lone fact that VanRiper's appeal was denied cannot establish futility for the remaining 53 Plaintiffs who never appealed the withdrawal of the grievance in the first place.

Second, the argument is inconsistent with Plaintiffs' statute of limitations defense. Plaintiffs argue here that President King's letter so clearly denied VanRiper's appeal, that pursuing administrative remedies would be futile for the remaining Plaintiffs – but they later argue that the same letter did not apprise them of a cause of action (i.e. that the union would not fairly represent them and/or GM violated the CBA). (Doc. 48, at 5-8, 11-12). Plaintiffs' contradictory argument cannot overcome the undisputed evidence of failure to exhaust put forth by Defendants.

Last, Plaintiffs generally challenge the Union Defendants' failure to investigate and accuse them of corruptive practices, but provide no evidence to support their claims. Accordingly, they have not made a "clear and positive showing" of futility under the hostility factor. *Miller*, 748 F.2d 323, 326 (6th Cir. 1984).

In sum, the Court finds 53 Plaintiffs did not exhaust administrative remedies and have not shown futility. Therefore, Plaintiffs' claims, excluding those of VanRiper and Hanley, are unexhausted and must be dismissed. Moreover, all Plaintiffs' claims are untimely; therefore, they are properly dismissed with prejudice, as explained below. *See*, *Howell v. General Motors Corp.*, 19 F. App'x 163, 166 (6th Cir. 2001) ("[w]hile a dismissal without prejudice permits a plaintiff

11

to refile the action, that does not mean the refiled action will necessarily be filed within the applicable statute of limitations.").

Statute of Limitations

Next, Defendants move for summary judgment because all Plaintiffs have failed to timely file for relief. The statute of limitations for filing a hybrid § 301 claim is six months. *DelCostello*, 462 U.S. at 169. Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action, even if some possibility of non-judicial enforcement remained. *Wilson*, 83 F.3d at 757; *see Bippus v. Local 100 of Int'l Bhd. of Teamsters*, 1984 WL 2315, at *3 (S.D. Ohio 1984). A hybrid claim "accrues against a company defendant at the same time it accrues against a union defendant, since the predicate for the entire action is that the union breached its duty of fair representation." *Bloedow v. CSX Transp., Inc*. 319 F.Supp.2d 782, 787 (N.D. Ohio 2004).

A prospective § 301 hybrid claimant need not have official notification of a union's possible breach in order for rights to accrue for statute of limitations purposes. *Id*. at 788-89. Rather, prolonged or unreasonable delay by the union is enough to put a person on notice of the existence of her claim. *Id*. at 789 (quotations omitted). For instance, when affirming the dismissal of a hybrid claim as untimely, the Sixth Circuit opined, "[i]n light of plaintiff's testimony that he felt the Union was giving him the 'run-around,' the Union's inactivity after the . . . letter should have put him on notice of his claim against the Union." *Yates v. Memphis Bakery Emp'rs Ass'n*, 907 F.2d 151, at *2 (6th Cir. 1990). Importantly, the determination of the accrual date is an objective one, meaning "the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue." *Gately v. Textron, Inc.*, 125 F.3d

855, at *2 (6th Cir. 1997) (quoting *Noble v. Chrysler Motors Corp., Jeep Div.,* 32 F.3d 997, 1000 (6th Cir. 1994)).

Here, the Union Defendants argue Plaintiffs were told of their position as early as 2009, and certainly by: 1) May 1, 2011, when they received a letter from the UAW GM Skilled Trades Coordinator "reconfirming the Unions' position that the Toledo former skilled trades people were properly paid"; or 2) June 2011, when International Representatives visited the plant and explained "the International's position as to why the former skilled trades people were getting paid production wages." (Doc. 42, at 20). For its part, GM argues the statute of limitations accrued at least by June 2012, when President King unequivocally denied VanRiper's appeal. (Doc. 40, at 13-15).

Construing the facts in the light most favorable to Plaintiffs, the statute of limitations must have started to run at least by June 2012. The Hanley Grievance was filed on February 24, 2011 and properly appealed in accordance with the procedures set forth in the CBA. (Doc. 31, at ¶¶ 20-24). Plaintiffs received notice of Defendants' joint decision to withdraw the grievance on September 13, 2011. (*Id.*, at ¶25). Previously the Sixth Circuit has found "the statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance." *Garrish v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590, 595 (6th Cir. 2005). Without a doubt, the withdrawal of the grievance certainly apprised Plaintiffs of the acts giving rise to their cause of action.

And, even if the Court subscribed to Plaintiffs' argument that the VanRiper and Hanley appeals tolled the statute of limitations for all Plaintiffs, President King's June 2012 letter was unequivocal in stating the withdrawal of the grievance was proper and no purpose would be served by an appeal. (Ex. 23, Doc. 31). Indeed, the six-month limitations period for challenging a

union's action under § 301 begins running when a union takes an "unequivocal position" that it will not pursue an employee's claim against the employer. *Dorn v. Gen. Motors Corp.*, 131 F. App'x 462, 469 (6th Cir. 2005) (quoting *Glass, Molders, Pottery, Plastics & Allied Workers Local 421 v. A–CMI Mich. Casting Ctr.*, 191 F.3d 764, 767 (6th Cir.1999)).

In his letter, President King penned, "pursuant to Article 33, Section 2(b) of the International Constitution, your appeal is respectfully denied and there is no further appeal from this decision." (Ex. 23, Doc. 21, at 6). VanRiper acknowledged she and Hanley received this denial in June 2012. (Ex. 4, Doc. 28, at 78). Clearly, President King notified VanRiper, and arguably the rest of the Plaintiffs, that she had reached the end of the road. As previously mentioned, Plaintiffs acknowledge that President King's decision was made within his authority and even argue the language of the letter rendered any other appeals futile. (Doc. 48, at 11-12). Thus, at the latest, the six month statute of limitations began to run in June 2012; however, Plaintiffs did not file their Complaint until September, 2013 – more than one year later. (Doc. 1).

In an effort to prove the Complaint was timely, Plaintiffs claim "the statute of limitations was tolled during the period when plaintiffs pursued internal union remedies, which concluded with a decision made by Chuck Browning from the International Union, UAW on March 22, 2013." (Doc. 1, at ¶2; Doc. 48, at 5-7). However, "requests for needless review" will not delay the accrual of the statute of limitations. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 804 (6th Cir. 1990) (quoting *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 852 (7th Cir. 1985)). Otherwise, "a plaintiff could indefinitely delay resolution of labor disputes merely by bombarding his union with tiresome requests for needless review." *Id.* at 804 (citing *Dozier*, 760 F.2d at 852).

14

Alternatively, Plaintiffs argue the statute of limitations was tolled until the time of depositions when it was "revealed that the Union and GM had conspired to keep the 63(b) applications on file forever." (Doc. 48, at 8). But, Plaintiffs were certainly well-aware of their cause of action by the time their depositions were taken in this case; they had already filed the Complaint.

Last, Plaintiffs claim the Defendants' alternative arguments made in their motions create a genuine issue of material fact. However, that argument is misplaced as each proposed date would result in an untimely Complaint, and therefore, does not foreclose judgment as a matter of law.

In sum, Plaintiffs objectively should have become aware of their claims, that the Union Defendants failed to fairly represent them and GM breached the CBA, when their grievance was jointly withdrawn in 2011 and at the very latest when President King wrote VanRiper in June 2012. However, the Complaint was not filed until September 20, 2013. Therefore, Defendants have established that Plaintiffs' hybrid § 301 claim against them is time-barred and they are entitled to summary judgment. As the Complaint was not timely filed, it is not necessary for the Court to address Defendants' remaining contentions.

### PLAINTIFFS' SUPPLEMENTAL BRIEF

During oral argument, the Court indicated it was unable to find legal authority contrary to Defendants' argument that the Complaint was barred by the statute of limitations. Plaintiffs could not direct the Court to legal authority at the time, but were granted an additional seven days to file "supplemental authority on the issue of whether the Complaint is barred by the statute of limitations." (Doc. 51). Plaintiffs filed a supplemental brief, which contained no legal support whatsoever and raised a new argument related to the International Union's review of the

grievance. (Doc. 52). Defendants assert the new argument is not properly before the Court and the Union Defendants further aver the new argument is without merit. (Docs. 53, 54).

The Supplemental Brief is properly construed as a sur-reply. It is well-established that a party should not raise new arguments in a reply brief. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). "Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further, the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument." *Id*. (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

Although Defendants were able to (and did) respond to the new argument, Plaintiffs' brief goes beyond the scope of the Court's request raising a completely new argument for consideration rather than identifying supporting authority for arguments previously made. What is more, the supplemental brief does not contain supporting legal authority for the new argument. Accordingly, Plaintiffs are deemed to have waived the argument first raised in the Supplemental Brief and GM's Motion to Strike (Doc. 54) is granted.

## CONCLUSION

Because no genuine issues of material fact exist on any of Plaintiffs' claims, the Court grants Defendants' Motions for Summary Judgment (Docs. 40, 42). The case is dismissed.

IT IS SO ORDERED.

s/James R. Knepp II
United States Magistrate Judge